UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION



FILED
MAY 1 2 2017
CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| JULIE McKENZIE, | CIV 17-4011 |
| Plaintiffs, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| FARMERS INSURANCE EXCHANGE, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Defendant Farmers Insurance Exchange has been served with a Summons and Complaint in this action, but has failed to appear and answer the Complaint. Accordingly, on March 9, 2017, Plaintiff filed a Motion for Entry of Default under Federal Rule of Civil Procedure 55(a), Doc. 8. Default was entered by the Clerk on March 9, 2017, Doc. 9. On March 10, 2017, Plaintiff filed a Motion for Entry of Default Judgment under Federal Rule of Civil Procedure 55(b)(2). Doc. 10. A hearing on Plaintiff's Motion for Default Judgment was held before the Court on Monday, May 8, 2017, at 10:00 A.M., Doc. 12. Plaintiff appeared personally along with her attorneys of record, Eric T. Preheim and Molly K. Beck. Defendant was not present. The Court has reviewed the record and pleadings and having heard arguments of Plaintiff's counsel and testimony of witnesses and having examined the evidence introduced does make these findings of fact and conclusions of law:

BACKGROUND

Plaintiff is a woman born in 1965, single since 2001, and is a college graduate. The Plaintiff has been employed outside the home but more recently has instead been helping with the care of her five grandchildren.

In June 2014, Ms. McKenzie's home was damaged during hailstorms that went through the Sioux Falls region. Ms. McKenzie timely submitted a claim to Farmers Insurance Exchange ("Farmers") for the hail damage to her home. She had been their insured for 18 years. After

conducting an initial inspection in November 2014, Farmers notified Ms. McKenzie in a letter dated January 5, 2015, that it was going to:

> [T]emporarily close your claim until we can complete a safe and practical inspection. When weather conditions allow for an inspection, and your property is clear and dry, we'll promptly reopen your claim, inspect the damaged property and complete your claim.

Farmers' January 5, 2015 letter went on to specifically prohibit Ms. McKenzie from making the necessary repairs until it conducted another inspection. Farmers never reopened Ms. McKenzie's claim and never returned for another inspection.

Ms. McKenzie became worried about getting the damaged property fixed and contacted Farmers about the status of her claim. She had sold the house after the hail damage, and sold it with the representation that she would have all of the hail damage repaired. Ms. McKenzie was worried that she was going to get sued for non-performance. The home was insured for $1,025,000. Farmers stated that it would not release the withheld depreciation because the repair work had not been "completed within 365 days of November 3, 2014." But Ms. McKenzie was not able to make the repairs within 365 days of November 3, 2014, as she was precluded from doing so by Farmers' January 5, 2015 letter. Even when Farmers was reminded of the January 5, 2015 letter to Ms. McKenzie and the reasons for why the repairs were not able to be completed within the 365-day deadline, Farmers still refused to release the depreciation. Farmers' refusal persisted even after Ms. McKenzie's repairs were completed at a cost to her of $79,390. The roof was a wood shake roof.

Farmers either knew or recklessly disregarded the fact that Ms. McKenzie would rely on its representations and admonitions in the January 5, 2015 letter to her detriment. In fact, Farmers' January 5, 2015 letter and subsequent inaction was used to induce Ms. McKenzie to miss the 365-day deadline for completing repairs, thereby wrongfully depriving her of the withheld depreciation, a benefit owed under the policy.

In a denial letter the insurer claimed that there was $29,466.82 recoverable depreciation but that the "time to recover the $29,466.82 recoverable depreciation for the roof and windows was

January 9, 2016," that quote being in the July 11, 2016 denial of benefits letter. Again, in the January 5, 2015 letter to the insured, the insurer also stated:

> Weather conditions during the winter months usually make roof/exterior inspections unsafe and impractical, so we will temporarily close your claim until we can complete a safe and practical inspection. When weather conditions allow for an inspection, and your property is clear and dry, we'll promptly reopen your claim, inspect the damaged property and complete your claim.
>
> . . . . .
>
> However, if the loss isn't covered, you'll be responsible for any expenses incurred. We'll need to inspect your home before final repairs are initiated.

There was no excuse for withholding the insured's depreciation payment and the continued refusal to withhold in view of the circumstances was bad faith. *See Johnson v. Coss*, 2003 S.D. 86, ¶ 15, 667 N.W.2d 701, 706 (quoting 13 Richard A. Lord, Williston on Contracts, § 39:4 (4th ed. 2000)) ("the nonoccurrence or nonperformance of a condition is excused where the failure of the condition is caused by the party against whom the condition operates to impose a duty."); *see also Bailey v. Farmers Union Co-op Ins. Co. of Nebraska*, 1 Neb. App. 408, 418, 498 N.W.2d 591, 598 (1992) (citing *Chadd v. Midwest Franchise Corp.*, 226 Neb. 502, 412 N.W.2d 453 (1987)) ("A [contractual] condition is excused if the occurrence of the condition is prevented by the party whose performance is dependent upon the condition.") In line with this general principle of contract law, "an insured should not be barred from recovery for failure to rebuild within the time constraints of the policy when the conduct of the insurer prevented the insured from rebuilding." *Bailey v. Farmers Union Co-op Ins. Co. of Nebr.*, 498 N.W.2d 591, 599 (Neb. S.Ct. 1992).

The Supreme Court of Maine was presented with this issue where the insurer's own actions caused the delay in construction in *Maine Mut. Fire Ins. Co. v. Watson*, 532 A.2d 686 (Me. 1987). The *Watson* Court, in awarding replacement costs and rejecting the insurer's allegations that the insured was not entitled to replacement costs because the repairs were not completed within a set time period, reasoned:

> The [insurer] was made [a]ware of the misstatement made by its adjuster, and yet neither the company nor the adjuster took any affirmative steps to correct the error. The [insured] was allowed to continue to labor under the false impression created by the adjuster. The [insurer] seems to take the position that its nonfeasance was

allowable because the insured eventually had legal representation. That, of course, is no excuse whatsoever. Throughout the entire processing of his claim the [insured] was never certain the insurer was going to recognize this claim. The direct result of this uncertainty was the delay of the start of construction. To agree with the [insurer] would be to allow a party to take advantage of his own wrong, which we will not countenance.

*Id.* at 689 (internal citations omitted).

The same is true here. It was Farmers' own actions that made it impossible for Ms. McKenzie to make the repairs within one year when Farmers unilaterally closed her claim on January 5, 2015, and instructed her not to begin repairs until it completed another investigation. But it never reopened her claim and never conducted another investigation. Thus, the condition that the repairs be completed within 365 days is excused. Plaintiff is entitled to the replacement costs she was promised, and for which coverage she paid for under her policy.

Plaintiff separately complains of depreciation also being without for pure labor. The South Dakota Division of Insurance has already told insurance companies that they cannot withhold or depreciate labor costs. *See* S.D. Bulletin No. 2003-4 ("It is the Division's position, based on the policy language, that labor costs are owed whether the vehicle is repaired or not.") This same practice of depreciating labor costs was also applied to another of Defendant's insureds who also testified at the evidentiary hearing. That 85 year old insured had been insured by Farmers for about 50 years.

## ANALYSIS
### Punitive Damages Are Appropriate

This action is before the court on diversity grounds and South Dakota state law supplies the substantive law. In South Dakota, general damages do not normally include exemplary or penal damages. SDCL 21-1-4. But plaintiffs may, in certain circumstances, recover punitive damages. *Dahl v. Sittner*, 474 N.W.2d 897, 900 (S.D. 1991); SDCL 21-3-2. Under SDCL 21-3-2, a plaintiff claiming punitive damages must show that "the defendant has been guilty of oppression, fraud, or malice, actual or presumed." If the plaintiff makes this showing, punitive damages may be given "for

the sake of example, and by way of punishing the defendant." SDCL 21-3-2; *see also Gross v. Kouf*, 349 N.W.2d 652, 654 (S.D. 1984) ("[T]he purpose of awarding punitive damages is to punish the wrongdoer.... [T]his [punitive] award should serve as a warning to others").

Before a claim for punitive damages may be submitted to a factfinder, the court must find that a reasonable basis exists to "believe that there has been willful, wanton or malicious conduct on the part of the party claimed against." SDCL 21-1-4.1. The party seeking punitive damages must make this showing by clear and convincing evidence. *Id.* After the party makes this showing, however, she must only demonstrate to the factfinder by a preponderance of the evidence that she is entitled to punitive damages. *Dahl*, 474 N.W.2d at 902 (citing *Aschoff v. Mobil Oil Corp.*, 261 N.W.2d 120, 125 (S.D. 1977)).

All punitive damages claims require a showing of either actual or presumed malice. *Id.* at 900. "Actual malice is a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or illwill towards that person." *Id.* (citing *Gamble v. Keyes*, 178 N.W. 870, 872 (S.D. 1920)). A person acts with actual malice when his actions are intentional. *Moosmeier v. Johnson*, 412 N.W.2d 887, 890 (S.D. 1987).

Plaintiff argues that Farmers Insurance acted with presumed malice. "Presumed, legal malice ... is malice which the law infers from or imputes to certain acts." *Dahl*, 474 N.W. 2d at 900 (citing *Hannahs v. Noah*, 158 N.W.2d 678, 682 (S.D. 1968)). An inference of malice may be made when the person acts willfully or wantonly and injures another. *Id.* "Willful and wanton misconduct demonstrates an affirmative, reckless state of mind or deliberate recklessness on the part of the defendant." *Tranby v. Brodock*, 348 N.W.2d 458, 461 (S.D. 1984). This is an objective, not subjective, standard. *Id.* The actions of Farmers Insurance demonstrate, at a minimum, an objective standard of a reckless state of mind. This state of mind is determined by an objective standard rather than a subjective state of mind of the Defendant. See *Tranby* at 348 N.W.2d at 461. More than one employee of Farmers was exposed to this claim and had an opportunity to right this wrong.

5

Plaintiff has met the standard by clear and convincing evidence that Farmers Insurance acted with presumed malice by its willful actions and inactions. Usually after this showing of clear and convincing evidence, it would be up to a jury for determination. However, in this case there is a default judgment because Farmers Insurance did not respond to Plaintiff's pleadings or to subsequent notification of this litigation. Therefore, Plaintiff must demonstrate to the Court by a preponderance of the evidence that she is entitled to the punitive damages she seeks in the amount of $880,000. In rough comparison, a South Dakota jury awarded $200,000 in compensatory damages and $6 million in punitive damages in an insurance bad faith case. *McElgunn v. CUNA Mutual Insurance Society*, 700 F.Supp.2d 1141 (D.S.D. 2010). The punitive damages were reduced to $1.6 million, an 8-to-1 ratio with the observation that the $200,000 for emotional and mental harm had a punitive aspect to it. There is no punitive aspect to the $50,000 compensatory damage award in the present case for emotional and mental harm that was less than in the *McElgunn* case. Also, in *Athey v. Farmers Insurance Exchange; Illinois Farmers Insurance Company*, CIV 96-4238 (D.S.D. 1996) a South Dakota jury awarded $160,000 for the underinsured motorist claim, $125,000 for the bad faith claim and $450,000 for the punitive damages claim for a total of $635,000.

The United States Supreme Court has established three "guideposts" for reviewing a punitive damages award: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm Mutual Insurance Co. v. Campbell*, 538 U.S. 408, at 418, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) (citations omitted). South Dakota has incorporated a five-factor test within these three guideposts. "(1) the amount allowed in compensatory damages, (2) the nature and enormity of the wrong, (3) the intent of the wrongdoer, (4) the wrongdoer's financial condition, and (5) all of the circumstances attendant to the wrongdoer's actions." *Roth v. Farner-Bocken Co.*, 667 N.W. 2d 651, 666 (S.D. 2003) (citation omitted).

To serve the purpose of punishment and determent, punitive damages must not be so "large as to shock the sense of fair-minded men, but they may considerably exceed compensatory

damages." *Gross*, 349 N.W.2d at 654. South Dakota does not apply a precise mathematical ratio between compensatory and punitive damages, rather "the amount of punitive damages turns on the particular facts of each case." *Id.*

With regard to the first factor, the amount of compensatory damages, the out-of-pocket payments to repair the hail damaged property was $79,390, less the $9,600 initially received from the insurer, and the applicable deductible of $20,500, for $49,290 still owed by Farmers Insurance to the Plaintiff. In addition, for general damages the Court is awarding $50,000 for the emotional distress and physical manifestations from that distress.

The insurer continued to refuse to pay the $29,466.82 of recoverable depreciation plus the withheld labor depreciation, Plaintiff was in a position where she was prohibited by the insurer from making the repairs but she was concerned that she would be sued by the purchasers of her house for failure to make the repairs. The house was sold after the hail damage but as a part of the transaction Plaintiff had to have the hail damage repaired. The Defendant, despite requests for an extension of time within which to make the repairs, continued to refuse to allow additional time for the repairs to be made and refused any further payment, so Plaintiff took the money for repair payment from her money market account which was what she considered to be her retirement account. During all of this the Plaintiff felt powerless and finally went to lawyers, and also paid for the hail repairs in August of 2016 in the total amount of $79,390. Plaintiff suffered emotionally and as a result had abdominal pain on numerous occasions and vomited three times as a result of Defendant's actions and inactions. The Court awards $50,000 for the emotional and physical injury proximately resulting from the actions and inactions of Farmers Insurance.

The second factor that the Court examined is for the nature and enormity of the wrong. We are not talking about mere negligence in this matter but rather a continued wrong against an insured that was owed a high duty of care. Even when presented with the fact that the insured did not get the roof repaired because the insurer told her not to until the insurer had inspected again, and the fact that in the winter time in South Dakota roof work could not be done, and despite having numerous

7

opportunities to recognize the correctness of Plaintiff's position, the insurer continued to rely upon their own Catch 22 position to deny payment to its insured.

For the third factor, the intent of the wrongdoer is hard to determine since the wrongdoer never responded to the lawsuit. More than one person for the insurer persisted in the denial so the continued denial had to be a company policy. There was no discovery in the case so the Court does not know whether this same approach was taken with other insureds. The Plaintiff argues that Farmers Insurance claims handling practices were at least partially responsible for the $750,000 penalty that was imposed by the South Dakota Division of Insurance in a Consent Order entered on June 3, 2015. The Consent Order was entered after the South Dakota Division of Insurance had numerous violations of South Dakota insurance law including among others, SDCL §§ 58-3-7, 47-3-7.4, 58-12-16(3), 58-33-2, 58-33-26, and 58-33-67(1), (3) and (4). These violations however were for a period between January 1, 2009 and June 30, 2012, that being before any of the operative facts of this present matter.

The fourth factor is the wrongdoer's financial condition. Plaintiff argues that Farmers Insurance financial condition is demonstrated by the fact that it had billions of dollars worth of premium. It does indicate a lot of business but it can be that an insurance company can do a lot of business and lose money on that business. Accordingly, the Court instead looks at the following as a public record that gives some other indication of the substantial worth of Farmers Insurance Exchange. Farmers Insurance Exchange is one of the insurers comprising Farmers Insurance Group. At its website, Farmers Insurance Exchange for 2016 explained in part: "The results of the Farmers Insurance Exchange were impacted by the large number of catastrophic losses but the company still maintained a strong capital base with a surplus of $4.2 billion."

The fifth factor is all of the circumstances attendant to the wrongdoer's actions. Even when the circumstances of this case were pointed out to the Defendant, they continued to persist in denying paying the benefit the insured was entitled to. The insured suffered from this and ultimately was fortunate enough to be able to go into her own funds that she considered her retirement funds to have

8

the work done so that the people who purchased her house would not sue her for failing to make the repairs that she had agreed to make once she sold her house after the hailstorm. There is no mathematical formula for the awarding of punitive damages under South Dakota law but there are constitutional limitations. In this case under the five factors and viewing the circumstances in total, the Court is awarding punitive damages on a 4-to-1 ratio, that being four times the actual damages of $99,290, that being $49,290 the insurer should have paid plus the $50,000 damages times four for a punitive damage award of $397,160. See *Craig Outdoor Adver., Inc. v. Viacom Outdoor*, 528 F.3d 1001, 1021 n. 9 (8th Cir. 2008) (rejecting the "argument that a 4:1 multiplier is the constitutional maximum in every commercial case." (citation omitted)). This is a reasonable amount to punish Farmers Insurance Exchange and to deter others from similar conduct.

Plaintiff requested attorney fees and the attorneys fees are awarded in the amount of $15,300 plus 6.5% sales tax of $994.50, for a total amount of $16,294.50. Attorney time, generally at $200 an hour resulted in $22,000 worth of charges, but counsel voluntarily reduced that amount prior to the hearing due to some duplication in the work. Prejudgment interest is also awarded on contractual damages in the amount of $4,807.46, with prejudgment interest from May 17, 2016, at the statutory rate of 10% per annum, that being $4,807.46. Plaintiff had requested January 5, 2015 as the date from which interest should accrue. The Court chose May 17, 2016 as that was not the first nor the last demand from Plaintiff to her insurer, but it was a clear demand which should have been accepted. (Ex. 21).

IT IS ORDERED:

1. That Default Judgment is entered in favor of Plaintiff Julie McKenzie and against Defendant Farmers Insurance Exchange.

2. That Plaintiff is awarded contractual damages in the amount of $49,290, plus prejudgment interest thereon from May 17, 2016, at the statutory rate of 10% per annum under SDCL §§ 21-1-13.1 and 54-3-16 in the amount of $4,807.46.

3. That Plaintiff is awarded attorneys' fees in the amount of $15,300, plus 6.5% sales tax of $994.50, for a total amount of $16,294.50.

4. That Plaintiff is awarded bad faith damages in the amount of $50,000 for emotional distress and physical manifestations from that distress.

5. That Plaintiff is awarded punitive damages in the amount of $397,160, a ratio of 4-to-1, four times $99,290 ($49,290 + $50,000), for a total award against Defendant Farmers Insurance Exchange in the amount of $517,551.96.

Dated this 12th day of May, 2017.

BY THE COURT:

*Lawrence Piersol*
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: *Debra Petersen*
DEPUTY