UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| JULIE MCKENZIE, | CIV 17-4011 |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO SET ASIDE DEFAULT JUDGMENT AND MOTION TO DISMISS |
| FARMERS INSURANCE EXCHANGE, | |
| Defendant and Third-Party Plaintiff, | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending before the Court is Defendant's Motion to Set Aside Default Judgment and Motion to Dismiss. Doc. 23. The Court requested Plaintiff's initial response to the motion only address whether or not the Court had jurisdiction to enter default judgment because without jurisdiction, the Court has no reason to determine whether or not to set aside the default judgment on other grounds. The Court has considered all filings and for the reasons set forth below, Defendant's motion is granted.

## FACTUAL BACKGROUND

In June 2014, Julie McKenzie's ("Plaintiff's") home was damaged during hailstorms that went through the Sioux Falls region. Plaintiff timely submitted a claim to Farmer's Insurance Exchange ("Defendant"), her insurer of 18 years, for the hail damage to her home. After conducting an initial inspection in November 2014, Defendant notified Plaintiff in a letter dated January 5, 2015, that it was going to temporary close Plaintiff's claim in order to "complete a safe and practical inspection" when whether conditions allowed. The letter went on to prohibit Plaintiff from making the necessary repairs until it conducted another inspection. Defendant never reopened Plaintiff's claim and never returned for another inspection.

Defendant was served with a Summons and Complaint in this action on February 14, 2017, but failed to appear and answer the Complaint. Accordingly, on March 9, 2017, Plaintiff filed a Motion for Entry of Default under Fed. R. Civ. P. 55(a), Doc. 8. Default was entered by the Clerk on March 9, 2017, Doc. 9. On March 10, 2017, Plaintiff filed a Motion for Entry of

Default Judgment under Fed. R. Civ. P. 55(b)(2), Doc. 10, and a hearing on Plaintiff's motion was held before the Court on Monday, May 8, 2017, at 10:00 A.M., Doc. 12. Plaintiff appeared personally along with her attorneys of record, Eric T. Preheim and Molly K. Beck. Defendant was not present. After reviewing the record and pleadings and having heard argument from Plaintiff's counsel, the Court entered Default Judgment in favor of the Plaintiff on May 12, 2017, Doc. 20. Plaintiff was awarded contractual damages in the amount of $49,290, plus prejudgment interest thereon from May 17, 2016, at the statutory rate of 10% per annum under S.D.C.L. §§ 21-1-13.1 and 54-3-16 in the amount of $4,807.46. Plaintiff was also awarded attorneys' fees in the amount of $15,300, plus 6.5% sales tax of $994.50, for a total amount of $16,294.50. Further, Plaintiff was awarded bad faith damages in the amount of $50,000 for emotional distress and physical manifestations from that distress, as well as punitive damages in the amount of $397,160, a ratio of 4-to-1, four times $99,390 ($49,290 + $50,000), for a total award against Defendant in the amount of $571,551.96.

On May 23, 2017, Defendant filed this Motion to Set Aside Default Judgment and Motion to Dismiss, Doc. 23, stating that, because both Plaintiff and Defendant, an unincorporated association formed under California law, are citizens of South Dakota, diversity jurisdiction does not exist and the Court lacks subject matter jurisdiction over the action. Therefore, Defendant asserts the default judgment asserted against it is void. In the alternative, Defendant asks the Court to relieve Defendant of the default judgment due to excusable neglect. On May 25, 2017, the Court requested briefs addressing Defendant's contention that the Court lacked subject matter jurisdiction over the action.

## DISCUSSION

A motion to vacate a default judgment order pursuant to Fed. R. Civ. P. 60(b) is addressed to the discretion of the trial judge unless the district court was powerless to enter the judgment in the first place. *See Kocher v. Dow Chemical Co.*, 132 F.3d 1225, 1229 (8th Cir. 1997). Thus, if the underlying judgment is void because the court lacked subject matter jurisdiction, "relief from void judgments is not discretionary." *See id.* (quoting *Chambers v. Armontrout*, 16 F.3d 257, 260 (8th Cir. 1994)). Accordingly, Fed. R. Civ. P. 60(b)(4) allows the Court to relieve a party from a final judgment, order, or proceeding if the judgment is void.

Plaintiff's complaint alleges the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, which requires complete diversity of citizenship between the

parties. For diversity jurisdiction, a corporation can be a citizen of its State of incorporation, as well as the State where it has its principal place of business. 28 U.S.C. § 1332(c). However, this grant of citizenship has not been extended to unincorporated entities and thus the courts have "adhere[d] to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all [its] members.'" *Carden v. Arkoma Associates*, 494 U.S. 185, 196 (1990) (quoting *Chapman v. Barney*, 129 U.S. 677, 682 (1889)). Despite the frequency with which the Court has referred to this rule, however, the Supreme Court has never expressly defined the term "members." *Id.* Instead, relying on specific States' laws, "we have identified the members of a joint-stock company as its shareholders, the members of a partnership as its partners, the members of a union as the workers affiliated with it, and so on." *See Americold Realty Trust v. Conagra Foods, Inc.*, 136 S.Ct. 1012, 1015 (2016). Defendant is an unincorporated reciprocal or inter-insurance exchange formed under the laws of the State of California. Accordingly, the citizenship of Defendant is dependent upon the citizenship of its members and the Court must look to California law to define "member."

Historically, interinsurance exchanges were formed by individuals, partnerships, or corporations engaged in a similar line of business who undertook to indemnify each other against certain kinds of losses by means of a mutual exchange of insurance contracts. *See Lee v. Interinsurance Exchange*, 57 Cal. Rptr. 2d 798, 803 (Cal. Ct. App. 1996) (citing Reinmuth, *The Regulation of Reciprocal Insurance Exchanges* (1967) ch. I, "The Development and Classification of Reciprocal Exchanges," pp. 1–2 [hereinafter, "Reinmuth"]). These contracts were usually exchanged through the medium of a common attorney-in-fact, who was appointed by the policyholders, or "subscribers." *See id.* (citing Reinmuth, *supra*). Thus, under this historical form, "each subscriber was both an insured and an insurer, and had several, not joint, liability on all obligations of the exchange." *Id.* (citing Reinmuth, *supra*, ch. II, "The Legal Status of Reciprocal Exchanges," pp. 10–20). That liability, then, stood in the place of capital stock that a shareholder of an incorporated entity would possess. *See id.* (citing Reinmuth, *supra*, ch. I, p. 2).

The original concept of reciprocal insurance allowed for the allocation of any surplus remaining from premium deposits to the individual subscribers. *See id.* (citing Reinmuth, *supra*, ch. I, p. 2, ch. II, pp. 30–31). Over time, reciprocals began to accumulate unallocated surplus in the event of catastrophic losses. *See id.* (citing Reinmuth, *supra*, ch. II, pp. 32–37, ch. X,

"Conclusions and Policy Alternatives," pp. 186–87). This led to many reciprocals, like the Defendant in this case, to obtain statutory rights to issue nonassessable policies. *See id.* (citing Reinmuth, *supra*, ch. II, p. 18). Nonassessable policies function like non-exchange insurance policies in that subscribers have no contingent liability for the claims of the exchange. *See id.* (citing Reinmuth, *supra*, ch. II, p. 39). However, some exchanges, again like that of the Defendant in this case, are managed by an attorney-in-fact. *See id.* at 803–04. (citing Reinmuth, *supra*, ch. II, p. 39).

The California Insurance Code provides that any persons may exchange reciprocal or interinsurance contracts with one another providing insurance...among themselves against any loss which may be insured against under other provisions of law." Cal. Ins. Code § 1300. "Such persons are termed subscribers." § 1301. In its exploration of interinsurance exchanges, the California Court of Appeals for the Second District, Division 3 laid out the defining statutory characteristics of modern day California interinsurance exchanges.

> First, section 1303 [of the California Insurance Code] now provides that reciprocals are no longer truly reciprocal enterprises, i.e., it is no longer true that each subscriber is both an insurer and an insured. Rather, section 1303 provides that a reciprocal insurance company, or interinsurance exchange, "shall be deemed the insurer while each subscriber shall be deemed an insured."
>
> As in historical times, a present-day interinsurance exchange is managed by an attorney-in-fact, who is appointed pursuant to powers-of-attorney executed by the exchange's subscribers. (§ 1305). . . . The board must be selected under rules adopted by the subscribers and is required to supervise the exchange's finances and operations to assure conformity with the subscriber's agreement and power of attorney. (§ 1308).

*Lee*, 57 Cal. Rptr. 2d at 804.

Further, California's Corporations Code provides:

[A] "member" means a person who, pursuant to the governing principles of the unincorporated association, has a right to participate in the selection of persons authorized to manage the affairs of the unincorporated association or in the development in policy of the unincorporated association.

Cal. Corp. Code § 18015.

Plaintiff asserts this Court has diversity jurisdiction because the subscribers to Defendant's interinsurance exchange are not "members" as defined by California law and, therefore, Defendant is not a citizen of South Dakota. Plaintiff is correct in asserting that it is not enough to rely on what a company labels as its members. Instead, "[a] court must peer beneath

4

the label and probe the actual circumstances of the person's relation with the [exchange]." *Morson v. Kreindler & Kreindler, LLP*, 616 F. Supp. 2d 171, 173 (D. Mass. 2009). In the case at hand, subscribers can vote for who sits on the Board of Governors, "which in turn appoints the Exchange's officers." The Board of Governors is also charged with "supervis[ing] the financial affairs of the Exchange and the performance of the [attorney-in-fact] in conformity with the Subscription Agreement terms." Thus, the Court finds Defendant's subscribers do indeed have "a right to participate in the selection of persons authorized to manage the affairs of the unincorporated association" as required to be considered "members" under California law. Therefore, in accordance with the Supreme Court's analysis in *Americold*, the Court finds Defendant, as an unincorporated association, is a citizen of each state in which their members are citizens. *See Americold*, 136 S. Ct. at 1015–16 (relying on state law to determine members' citizenship of an unincorporated entity). Plaintiff is a member of this insurance exchange and a citizen of South Dakota for diversity purposes. Thus, Defendant is also a citizen of South Dakota, and complete diversity does not exist in this case.

This conclusion is supported by the majority of case law addressing the issue. *See Privilege Underwriters Reciprocal Exch. v. Research Products Corp.*, No. 3:16-cv-426-DJH, 2017 WL 628460 (W.D. Ky. Feb. 15, 2017); *Staggs v. Farmers Ins. Exch.*, No. 3:15-cv-01502-MC, 2016 WL 1725302 (D. Or. Apr. 27, 2016); *Nevada Capital Ins. Co. v. Farmers Ins. Exch.*, No. 2:12-cv-02166-APG-CWH, 2014 WL 6882342 (D. Nev. Dec. 4, 2014); *James G. Davis Const. Corp. v. Erie Ins. Exch.*, 953 F. Supp. 2d 607 (D. Md. 2013); *Hartfield v. Farmers Ins. Exch.*, No. 11-13719, 2013 WL 126235 (E.D. Mich. Jan. 10, 2013); *James River Ins. Co. v. Cast & Assocs., Inc.*, No. 4:11-CV-00730-JJM, 2012 WL 1190891 (D. Ariz. Mar. 5, 2012); *Farmers Ins. Exch. v. MTD Prods.*, No. 3:11-CV-2405-L, 2013 WL 136235 (N.D. Tex. Nov. 22, 2011); *Tyler v. Nightengale*, No. 4:07CV3132, 2007 WL 4287492 (D. Neb. Dec. 5, 2007). Although Plaintiff urges the Court to follow the ruling presented in *Garcia v. Farmers Ins. Exch.*, 121 F. Supp. 2d 667 (N.D. Ill, 2011), the Court declines to do so.

In *Garcia*, the court asserted that "subscribers or policyholders are its customers, not its members. I do not become a member of a business association merely by entering into a contractual relationship with it for the purchase of goods, services, or insurance protection." *Garcia*, 121 F. Supp. 2d at 669. Therefore, the court found that the insurance exchange in that case had failed to come forward with sufficient evidence to controvert allegations of jurisdiction.

*See id.* at 670. By contrast, here, Defendant has presented evidence by affidavit that it has policyholders in the state of South Dakota. Though Plaintiff disputes that the policyholders should be considered "members" for purposes of diversity jurisdiction, Plaintiff does not dispute that Defendant does indeed have policyholders in the state of South Dakota. *See AMCO Ins. Co. v. Erie Ins. Exch.*, No. 11-C-4842, 2011 WL 5833977, *4 (N.D. Ill. Nov. 16, 2011) (finding that, in contrast to the case presented in *Garcia*, the defendant had submitted persuasive evidence of its members' citizenship and therefore dismissing for lack of subject matter jurisdiction); *see also Rockford Mut. Ins. Co. v. Truck Ins. Exch.*, No. 12-C-7549, 2013 WL 1154462, * (N.D. Ill. Mar. 19, 2013) (finding *Garcia*'s holding unpersuasive because the court in *Garcia* "did not closely consider" the relationship between insurers and insured). The law as interpreted here does not leave much room for federal court jurisdiction over disputes involving large, nationwide interinsurance exchanges where controlling state law as to membership is favorable to the Defendant, given state law as it currently stands in California, the Court is without power to create jurisdiction where the law as applicable to this case expresses otherwise.

However, the Court does not reach this conclusion lightly. This Court, like the court in *Staggs*, is deeply disturbed by the extent to which Plaintiff correctly identifies that Defendant "strategically and self-servingly" argues opposing theories of diversity jurisdiction. *See Staggs*, 2016 WL 1725302 at *8, n. 3. The court in that case identified a number of similar cases where the defendant—the very same Defendant in this case—actually sought to remove similar cases from state to federal court on the basis of diversity of citizenship. *See id.* (citing *Fountain v. Farmers Ins. Exch.*, No. 4:13-cv-120-D(2), 2014 WL 6851623 (E.D.N.C. Dec. 3, 2014); *Wheeler v. Farmers Ins. Exch.*, No. 13-cv-0951, 2014 WL 280356 (W.D. La. Jan. 22, 2014); *Brackney v. Farmers Ins. Exch.*, No. 4-11-cv-00527-FJG, 2011 WL 3678822 (W.D. Mo. Aug. 22, 2011); *Thompson v. Victoria Fire & Cas. Co.*, 32 F. Supp. 2d 847 (D.S.C. 1999); *Incopero v. Farmers Ins. Exch.*, 113 F.R.D. 28 (D. Nev. 1986). Here, Plaintiff also points to *Farmers v. Fredrickson*, No. 16-4214 (8th Cir.) (initiated by Defendant in the District Court of Arkansas as a Declaratory Judgment Action in a coverage dispute with an insured but later dismissed for lack of jurisdiction) and this Court pointed out a similar case in this very jurisdiction, *Athey v. Farmers*, CIV 96-4238 (D.S.D. 2000), in its earlier order asking for briefing on the subject matter jurisdiction issue. In *Athey*, a previous insurance bad faith case in this Court, the jurisdiction

issue was apparently not raised and judgment from the jury verdict was satisfied by payment of $728,637.44. *See id.*

Defendant has attempted to explain away a few of these cases as either mistakes attributable to attorney error or the misnaming of Defendant as a party. Even if the Court took Defendant's word on the cases addressed, and it does not, Defendant fails to address *Brackney*, *Incopero*, and *Athey*. The court in *Staggs* "cautioned Farmers in its approach to analogous litigation in the future," though it granted Defendant the benefit of the doubt, noting "that this particular area of law is unsettled in many jurisdictions, which explains the conflicting arguments Farmers has made in other lawsuits." *Staggs*, 2016 WL 1725302 at *8, n. 3. No such benefit can be afforded here, where Defendant fails to address *Athey*, which this Court specifically requested Defendant explain, as it was filed in this very same jurisdiction. Defendant's selective invocation of federal jurisdiction is a waste of its insureds time and resources as well as that of the courts. This Court finds this apparent strategy more than "troubling," it is sophistry at best, and instead appears to be chicanery. Nevertheless, "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (explaining that consent of the parties and principles of waiver and estoppel do not apply to subject matter jurisdiction). The Court cannot exercise jurisdiction it does not have and must grant Defendant's Motion to Set Aside Default Judgment and Motion to Dismiss as the default judgment granted in this case was void for lack of subject matter jurisdiction. Accordingly,

IT IS ORDERED:

    1. Defendant's Motion to Set Aside and Motion to Dismiss, Doc. 23, is GRANTED.

Dated this ___ day of February, 2018.

BY THE COURT:

*[signature]*

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

BY: *[signature]*
Deputy

7